New York Car Oil Company agt. Richmond.

———◆●———

## NEW YORK SUPERIOR COURT.

THE NEW YORK CAR OIL COMPANY, respondents, agt. ALLEN H. RICHMOND and ABRAHAM SPRINGSTEEN, appellants.

The act of 1848 authorizing the formation of corporations for manufacturing, mining, mechanical or chemical purposes, requires that a *certificate* of such incorporation be filed in the office of the clerk of the county, and a duplicate thereof in the office of the secretary of state, and that "the copy of any certificate of incorporation, filed in pursuance of the act, certified by the county clerk or his deputy to be a true copy, and of the whole of such certificate, *shall be received in all courts and places as presumptive legal evidence* of the facts therein stated."

*Held*, that this provision does not necessarily exclude every other mode of proving the fact of incorporation; hence, where it was proved that the certificate was duly executed, and was filed with the county clerk, and the fees paid, but was thereafter lost, the party could not be prejudiced thereby, if he could prove the fact by other competent testimony.

Therefore, proof given by witnesses on the trial of the filing and the contents, by the production of a copy sworn to be a true copy of such certificate, and that the original could not be found, was proper evidence. And where a copy of the duplicate certificate, filed in the office of the secretary of state, was not only certified, but

was produced and sworn to be a true copy, the evidence was competent and suffi-
cient.

Where the appellant alleges and relies upon defects in the certificate of incorporation
of the respondents, as not a compliance with the statute, but does not see fit to set
forth a copy in his case or exceptions, the court will consider the finding of the
court below, or the referee, upon that question, as conclusive on the appeal.

Where property is levied upon and taken by a sheriff or constable under an execu-
tion, and it appears that when the levy was made the property was in the actual
possession of the defendant in the execution, the sheriff or constable may be enti-
tled to a *demand of the property before action brought* for such taking. But it
is only when the property is *lawfully* in possession of the defendant that a previous
demand before suit brought is necessary.

The mere fact of a person in the employ of the defendants in an execution, but not
their general agent, pointing out property as the property of the defendants, and
consenting to a levy, does not conclude or estop the owner from showing title and
*possession* in himself.

*New York General Term, March*, 1860.

*Present*, HOFFMAN, WOODRUFF *and* MONCRIEF, *Justices.*

APPEAL from judgment in favor of the plaintiffs, on trial
before a referee, pursuant to his report.

The action is brought to recover the possession of eight
and one-half casks of oil, and ten bushels of coal, and one
tank of oil, the property of the plaintiffs, of which it was
alleged the defendants had become wrongfully possessed,
and which they wrongfully detained from the plaintiffs,
who, as the complaint alleged, are a manufacturing corpo-
ration, organized under the act of February 17th, 1848,
entitled " an act to authorize the formation of corporations
for manufacturing, mining, mechanical or chemical pur-
poses."

The answer of the appellant, Richmond, who alone
defended, denied that the plaintiffs are a corporation;
denied that the plaintiffs owned or had any interest in the
property; denied the taking or detention of the plaintiffs'
goods mentioned in the complaint; and for further answer
averred the recovery of a judgment by said appellant
against the " American Oil Manufacturing Company," the
issuing of an execution thereon, its delivery to the defend-
ant, Springsteen, a constable, the levy thereof upon pro-

perty on the premises occupied by the American Oil Manufacturing Company, which property belonged to the last named company, and was at the time in the custody of its agent, which property is partly described in the complaint.

On the trial before Daniel B. Taylor, Esq., to whom by consent the case was referred, the plaintiffs offered in evidence a copy of a certificate of association in the office of the secretary of state. The defendants objected to the evidence, on the ground that it was not in compliance with the statute; that the certificate of the county clerk of the fact that such certificate had been filed with him should be produced.

The plaintiffs then proved by the deputy clerk, from the county clerk's office, whose duty it was to enter such certificates in an index, that he had searched in that office, and could not find any article of association of the New York Car Oil Company on file, or in the office of the county clerk; and by two other deputies that the witnesses so examined had charge of the entering and filing of such certificates, and that one of the last named witnesses, according to the routine of business, received such papers and the fee for filing, thirteen cents, and delivered them to the first named witness the following morning, to be entered and filed in the proper place of deposit.

He then proved, by two witnesses, that the articles of association were executed in duplicate, one copy to be filed in the county clerk's office, and one to be sent to the secretary of state, and one of those witnesses stated that there were three original copies, all executed; that he filed one about the last of September, 1857, in the office of the county clerk; that he handed to the person at the desk, and paid him his charge, twelve or thirteen cents, and sent another copy to the secretary of state.

The same two witnesses, and also a third, testified that in January, 1858, they saw those articles of association in the office of the county clerk, and examined them there,

with a view to preparing the further certificate or report required by the statute, which must mean the report mentioned in the 12th section of the act, stating the amount of capital paid in, and other particulars there mentioned.

The copy produced was shown to be a true copy of the articles so filed, and it was received in connection with the oral testimony, as proof of the incorporation of the plaintiffs.

The taking of the goods, or so much thereof as was recovered, was then proved, viz., eight barrels of oil, and three barrels of coal, and their value; but it was also proved that the person who had the care of the manufactory where the property was found at the time of the taking, told the constable and the defendant, Richmond, by whose direction the constable was acting, that the property belonged to the defendants in the execution which he held, viz., to the American Oil Manufacturing Company.

There was great conflict of evidence on this question, whether the property belonged to the American Oil Manufacturing Company or to the plaintiffs, and whether in fact there was any such company as the "New York Car Oil Company." The defendants insisting that the whole claim of the plaintiffs was an artifice, resorted to to cover up and protect the property of the American Oil Company, by the pretence of having formed a new incorporation, and the further pretence that the oil in question was manufactured and owned by a new incorporation, when in truth the machinery, the lease of the factory, and all of the property belonged to the former company, which confessedly had held the lease, owned the machinery, and carried on the business, and that this was done to avoid the payment of the debts of the American Oil Manufacturing Company.

Testimony was also given by the defendants, tending not only to contradict, but to impeach the character of some of the plaintiffs witnesses.

The referee found, as matters of fact and law, that the plaintiffs were duly incorporated; that the property in question belonged to them; that its value was $310; and that they had sustained damage by the taking to the amount of $20, and awarded the property to the plaintiffs, with their said damages and costs of suit. The defendant appealed to the general term, and the exceptions taken on the trial raised the points considered in the opinion of the court.

MITCHELL SANFORD, *for appellant.*
E. W. DODGE, *for respondents.*

By the court, WCCFRUFF, Justice. I. The first exception upon which the appellant insists as a ground of reversal is, that the referee erred in admitting the certificate purporting to be a certified copy of the incorporation of the plaintiffs, filed in the office of the secretary of state.

This exception may be properly considered in connection with another, viz., that the referee should have granted a non-suit, as moved for by the defendants, on the ground that the plaintiffs did not sufficiently prove that they were duly incorporated under the act under which they claimed such incorporation, viz., the act of February 17, 1848. (*Laws of* 1848, *ch.* 40.)

In so far as these exceptions proceed upon the form of the certificate given in evidence, or the manner of its authentication, or any supposed defect therein, for want of compliance with the act, it must suffice to say that the appellant has not thought proper to embody the certificate of association, or the copy produced on the trial, in the case or bill of exceptions, settled and furnished to the court on appeal. We are therefore unable to discover whether there are or are not any such defects therein, and must assume that no such defects exist, and that the appellant does not rely upon any such defects as grounds of objection, nor

were any defects in the form of authentication thereof suggested on the argument of this appeal; and we have only to inquire whether, under the circumstances proved at this trial, the production of a certified copy from the office of the county clerk could be dispensed with, and whether without such production the incorporation of the plaintiffs could be proved at all, and was sufficiently proved.

The act of 1848 requires that a certificate be filed in the office of the clerk of the county, and a duplicate thereof in the office of the secretary of state; and in the 9th section the act provides that "the copy of any certificate of incorporation filed in pursuance of the act, certified by the county clerk, or his deputy, to be a true copy, and of the whole of such certificate, shall be received in all courts and places as presumptive legal evidence of the facts therein stated."

In the first place, we do not regard this provision as necessarily excluding every other mode of proving the fact of incorporation; it provides one mode of proving the fact, a simple and in general an easy mode of doing so.

But if such certificate ought to be regarded as the best evidence, and therefore to be produced in the first instance, the rule requiring a party to produce the best evidence only holds when such production is possible, and on its being shown that for some reason not within the control of the party the best evidence cannot be produced, secondary evidence may be given.

Hence the plaintiffs proved by evidence satisfactory to the referee, that the certificate was duly executed, and was filed with the county clerk, and the fees paid. The party was no longer responsible for the safe keeping of the certificate, and if it was lost by the county clerk after it had been left with him, the party could not be prejudiced thereby if he could prove the fact by other competent testimony. This the plaintiffs did by the best evidence that can be suggested. They proved the fact of filing, and

they proved the contents of the paper filed, by the production of a copy sworn to be a true copy of the certificate. From the necessity of the case, resulting from the loss of the paper filed, it was impossible that the county clerk could certify the paper produced to be a copy, and the plaintiffs were not responsible for the inability of the clerk to certify, and should not be prejudiced by it. Any other doctrine would render the proof of the existence of any corporation so organized dependent upon the care of the county clerk in preserving papers filed; and in case of the accidental destruction of papers in that office, render such proof wholly impossible; no such doctrine can be admitted for a moment.

In the next place, if the contents of the certificate could not be established by parol evidence, or by a sworn copy, the duplicate produced from the office of the secretary of state was the next highest evidence. It was proved that the certificate was executed in duplicate, and one was filed in the office of the secretary of state. A copy of this was produced, and was not only so certified, but was also sworn to be a true copy. We have no hesitation in saying, that even if there were no other provision by statute bearing on this subject, this proof of the plaintiffs incorporation was, after proof of the loss of the paper filed by the county clerk, competent and sufficient.

Again, the certificate was filed in the office of the secretary of state, in compliance with the express provisions of the law, and by the general laws of the state (1 R. S., 166, § 4), it is enacted that " all copies of records and papers in the office of the secretary of state, certified by him, and authenticated by the seal of his office, shall in all cases be evidence equally and in like manner as the original."

These views are sufficient; and we think they conclusively dispose of all objections founded on the idea that the plaintiffs were bound to prove their incorportion by producing either the original or a certified copy thereof from the

county clerk's office; and, as already suggested, the appellant not having seen fit to insert the paper or papers in his case or exceptions, we have no means of examining the contents, or form, or authentication thereof, to determine whether they are or are not a compliance with the statutes. The finding of the referee, therefore, must stand unimpeached by anything appearing before us on this appeal.

II. The next objection urged upon our attention is, that the plaintiffs should have proved a demand of the property before action brought.

Where property is levied upon and taken by a sheriff or constable under an execution, and it appears that when the levy was made the property was in the actual possession of the defendant in the execution, the sheriff or constable may be entitled to a demand of the property before action brought for such taking. It does not follow that the plaintiff in execution actually directing such levy and taking, is entitled to any such demand, if in truth the party so in possession has no leviable interest in the property taken.

In this case, Springsteen, the constable made no defence; he suffered judgment by default; as to him, therefore, the question does not arise.

But the very question: in whose possession was the property found? was one of the questions most severely contested on the trial. The same proof that bore upon this question, bore also on the inquiry whether the property belonged to the plaintiffs or to the defendants in the execution; and it is, we think, entirely clear that if the proof did not establish that the property belonged to the defendants in the execution, then it did not prove that the property, when levied upon, was in the possession of those defendants.

The referee has found that it was the plaintiffs' property, and unless that finding was against the evidence, we must regard the same proofs as establishing this point also; and if the defendant desired a specific finding upon the ques-

tion, from whose possession was the property taken? He should have called the attention of the referee to that subject, and procured such finding thereon. In the absence of such finding, we must take the fact to be favorable to the plaintiffs who have prevailed, since the evidence would, we think, clearly warrant such a finding. (*Fish* agt. *Wood*, 4 *Ed. Smith's R.*, 372; *Hardin* agt. *Palmer*, 2 *id.*, 172; *Viele* agt. *The Troy and Boston Railroad Company*, *in court of appeals, December*, 1859.)

It is only when the property is lawfully in the possession of the defendant that a previous demand before suit brought is necessary.

III. It is claimed that inasmuch as the person in charge of the manufactory pointed out the property as the property of the defendants in the execution, the plaintiffs are therefore concluded.

The mere circumstance that Hazzard, the person referred to, was in the employment of the defendant, wrought no such consequence. He was not the general agent of the defendant. It is testified that one Griffin was the plaintiffs' agent; that Hazzard stayed there and watched the building; was employed to take in and put out goods, and to watch the premises, and sometimes sold small quantities of oil. He could not estop the plaintiffs by consenting to a levy in satisfaction of the debt of a third person, any more than he could lawfully deliver the plaintiffs' property to the defendant (the judgment creditor) in payment of his judgment. Besides, Hazzard testified that he requested the defendants not to take the property, and that while he remained there they did not remove it; but he locked the door and left, in order to find and consult the plaintiffs' agents, and in his absence the defendants by some means opened the door, and were removing the oil when he returned.

IV. It only remains to consider whether the finding of the referee, that the property was the property of the

plaintiffs, was so against the weight of the evidence, that the judgment should be reversed upon that ground.

It must be conceded that there were many circumstances of suspicion in respect to the title of the plaintiffs to the manufactory and the machinery therein; and there was proof that the machinery had been claimed and taken by the American Oil Manufacturing Company (the judgment debtors), by process in a replevin suit that was still pending. The proofs relating to the incorporation of the plaintiffs; the ignorance of Hazzard, one of the employees in the factory, that there was any other company than the American Oil Manufacturing Company, and many other circumstances were justly calculated to create the suspicion that the last named company, having become embarrassed, the scheme of forming, or pretending to form a new company, was devised by its managers, in order to avoid the payment of the debts of the old company, and yet obtain the possession and enjoyment of its property under a new name.

But, on the other hand, there was positive proof that the new company was incorporated. There was some evidence that the new company purchased the machinery and lease of the factory, and the proof was uncontradicted that the oil in question was manufactured by the new company.

In a great conflict of evidence tending to establish either claim, we cannot say that the referee so erred in his conclusion, that his finding should be set aside. We could not do this even if we thought we should have formed the opposite conclusion.

An attempt was made to impeach the plaintiffs witnesses; on the other hand their characters were supported by other testimony. The case depended in no slight degree upon the credibility of the witnesses whom the plaintiffs produced; and if their testimony was believed, the case was clearly with the plaintiffs; the oil was their property.

Under such circumstances the finding of the referee must be taken by us as conclusive.

The judgment should therefore be affirmed, with costs.